UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re: Case No. A09-00565-DMD<br><br>THOMAS WILLIAM MORTENSEN,<br><br>Debtor. | Chapter 7<br><br>**Filed On<br>1/14/11** |
| KENNETH BATTLEY,<br><br>Plaintiff,<br><br>v.<br><br>ERIC J. MORTENSEN, ROBIN MARIE MULLINS, MARY MARGARET MORTENSEN-BELOUD, in their capacities as trustees of the Mortensen Seldovia Trust, and THOMAS W. MORTENSEN, in his individual capacity,<br><br>Defendants. | Adv. No. A09-90036-DMD |

**MEMORANDUM ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Kenneth Battley, chapter 7 trustee, has brought this adversary proceeding to set aside a transfer of real property on fraudulent conveyance theories. It is a core proceeding under 28 U.S.C. § 157(b)(2)(H). Jurisdiction arises under 28 U.S.C. § 1334(b) and the district court's order of reference. The parties have filed cross motions for summary judgment. For the reasons stated below, the motions will be denied and this matter will be set for trial.

Factual Background

This adversary proceeding involves a transaction that occurred in February, 2005, when the debtor, Thomas Mortensen, created an asset protection trust as permitted under AS 34.40.110. The stated purpose of the trust was "to maximize the protection of the trust estate or estates from creditors' claims of the Grantor or any beneficiary and to minimize all wealth transfer taxes."[1] The trust beneficiaries were Mortensen and his descendants. Mortensen had three children at the time the trust was created. The trust res consisted of real property the debtor owned outright located in Seldovia, Alaska. The property had a value of about $60,000.00 at the time it was transferred to the trust. The debtor has submitted evidence which supports his contention that he was living on this property at the time he created the trust and could have claimed it exempt as a homestead under Alaska law. After the debtor quitclaimed the Seldovia property to the trust, his mother sent him a total of $100,000.00. The debtor says this was part of the overall transaction, and he has provided correspondence from his mother to substantiate this point.

The debtor is a self-employed geologist and project manager. His income has fluctuated annually depending upon the market demand for his work and the number of contracts he is able to obtain. In the two years prior to the creation of the trust, the debtor's annual income had been about $13,185.00. However, in 2005 when the trust was created, the debtor had net income of $49,989.00. His income in subsequent years, through the time he filed his bankruptcy petition in 2009, ranged from a low of $14,297.00 in 2006 to a high

---

[1] Mortensen Aff. (Docket No. 21), Ex. 1 at Mortensen 0006.

2

of $41,271.00 in 2007. As reflected on a balance sheet which the debtor created in this adversary proceeding, based upon records he had retained from 2005, when he transferred the Seldovia property to the trust he had $29,881.00 in checking and savings accounts, business accounts receivables with a net value of $9,339.00, and two vehicles with a combined total value of $13,800. Including the $100,000.00 he received from his mother, the balance sheet shows his total assets in February, 2005, were worth $153,000.00. He had no mortgage payments or other secured obligations, but owed a total of $49,711.00 in credit card debt. There was no litigation pending against him, nor was any threatened.

The debtor stated in his deposition that he was solvent at the time he transferred the property to the trust, because he was making at least the minimum payments on those cards. After the trust was created, the debtor's credit card debt increased significantly. When he filed his chapter 7 petition in August of 2009, he scheduled $251,309.16 in credit card debt. $8,140.00 in medical debt was also scheduled. The debtor had no secured or priority debt. According to the debtor's deposition testimony, he used the cards to help with living expenses, transferred balances from one card to another in order to take advantage of better interest rates, and borrowed against his credit cards to invest in the commodities market. He says he did well for a while and was able to repay and then borrow again against his cards until 2008, when the market dropped. He said he didn't get out of the market fast enough. However, the debtor said he was always able to make at least the minimum payment on his credit cards, until he became ill in early 2009. He needed immediate surgery and was hospitalized for almost two weeks. His illness required a long period of convalescence. The

3

debtor says he tried to return to work but was on pain medication which made him "fuzzy." He lost several work contracts while he was recovering. He made the decision to file for chapter 7 relief in August, 2009, after looking at his financial situation and realizing he couldn't pay his debts.

Kenneth Battley, the chapter 7 trustee, initiated this adversary proceeding on November 4, 2009. His complaint seeks to recover the Seldovia property as a fraudulent conveyance. Battley and Mortensen have filed cross-motions for summary judgment. No oral argument was requested, and the motions are now ripe for ruling.

Discussion

Mortensen seeks summary judgment on two grounds: 1) the Seldovia property is not an asset of the bankruptcy estate because he placed this property in a valid "asset protection trust" recognized under Alaska law, and 2) the trustee's action is time barred because the applicable statutes of limitation found in 11 U.S.C. § 548(a) and under Alaska law have expired.[2] Battley's cross-motion seeks summary judgment under 11 U.S.C. § 548(e), which contains a ten-year limitation period for setting aside a fraudulent transfer. Section 548(e) provides:

> (e)(1) In addition to any transfer that the trustee may otherwise avoid, the trustee may avoid any transfer of an interest of the debtor in

---

[2] Under § 548(a), a trustee may avoid transfers made within two years before the date the debtor's bankruptcy petition was filed. Under Alaska law, the applicable limitation period is four years from the date the trust was created. AS 34.40.110(d)(1).

4

>property that was made on or within 10 years before the date of the filing of the petition, if –
>
>>(A) such transfer was made to a self-settled trust or similar device;
>
>>(B) such transfer was by the debtor;
>
>>(C) the debtor is a beneficiary of such trust or similar device; and
>
>>(D) the debtor made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made, indebted.[3]

Section 548(e) was added to the Bankruptcy Code in 2005, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act.[4] Section 548(e) "closes the self-settled trusts loophole" and was directed at the five states that permitted such trusts, including Alaska.[5] Its main function "is to provide the estate representative with an extended reachback period for certain types of transfers."[6] However, the "actual intent" requirement found in § 548(e)(1)(D) is identical to the standard found in § 548(a)(1)(A) for setting aside other fraudulent transfers and obligations.[7]

---

[3] 11 U.S.C. § 548(e)(1).

[4] Pub. L. No. 109-8, § 1042 (2005).

[5] 5 COLLIER ON BANKRUPTCY ¶ 548.10[1], [3][a] n.6 (N. Alan Resnick & Henry J. Sommer eds., 16th ed.).

[6] *Id.*, ¶ 548.10[2].

[7] 11 U.S.C. § 548(a)(1)(A), (e)(1)(D), *see also* 5 COLLIER ON BANKRUPTCY ¶ 548.10[3][d].

5

Mortensen's trust, established under AS 34.40.110, satisfies the first three subsections of § 548(e) – the Seldovia property was transferred to a self-settled trust, Mortensen made the transfer, and he is a beneficiary of the trust. Because the transfer falls within § 548(e), the shorter limitation periods relied on by Mortensen in his summary judgment motion are inapplicable. Moreover, the fact that Mortensen's trust complies with Alaska law will not protect it from avoidance if the trustee can establish all of the elements of § 548(e). Accordingly, Mortensen's motion for summary judgment will be denied.

The determinative issue here is whether Mortensen transferred the Seldovia property to the trust "with actual intent to hinder, delay, or defraud" his creditors.[8] Mortensen says he did not have this intent when he created the trust and that he was current on all of his obligations at the time it was created. Battley counters that Mortensen's intent is clear from the trust language itself and that Mortensen could not pay his debts when he transferred the property to the trust. The trust's stated purpose was to protect the Seldovia property from creditors' claims and to minimize wealth transfer taxes. However, under Alaska law, "a settlor's expressed intention to protect trust assets from a beneficiary's potential future creditors is not evidence of an intent to defraud."[9] For Battley to prevail here, an intent to hinder, delay or defraud cannot be presumed simply from the language of the trust document itself.

---

[8] 11 U.S.C. § 548(e)(1)(D).

[9] AS 34.40.110(b)(1).

Proving that a debtor had the requisite intent is difficult to establish. As the Ninth Circuit has noted, "the primary difficulty has been how to decide which transfers in fact hinder, delay or defraud creditors."[10] Circumstantial "badges of fraud" are often used to determine whether a transfer is a fraudulent conveyance.[11] Some of the more common "badges" include whether there was actual or threatened litigation against the debtor, whether the debtor transferred substantially all of his property and whether he retained an interest in it after the transfer, whether the debtor was insolvent, and whether there was a special relationship between the debtor and the transferee.[12] "The presence of a single badge of fraud may spur mere suspicion; the confluence of several can constitute conclusive evidence of actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose."[13]

The debtor's intent is evaluated at the time the transfer is made.[14] The trustee bears the burden of establishing the indicia of fraud.[15] The trustee argues that Mortensen intended to hinder and delay his creditors because he was insolvent when he made the

---

[10] *Kupetz v. Wolf*, 845 F.2d 842, 846 (9th Cir. 1988).

[11] *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 805 (9th Cir. 1994).

[12] *Id.* at 805-06.

[13] *Id.* at 805-06, *citing Max Sugarman Funeral Home v. A.D.B. Investors*, 926 F.2d 1248, 1254-55 (1st Cir. 1991).

[14] *Acequia, Inc.*, 34 F.3d at 806.

[15] *Id.*

7

transfer, he went on a "frenzy" of credit card borrowing after the trust was created, and he investigated the statute of limitations for asset protection trusts and filed bankruptcy just six months after the four-year limitation period had expired.[16] Mortensen counters that he created the trust under Alaska law, that he transferred exempt property to the trust, and that other factors, such as his illness and a declining market demand for his work, have caused his financial difficulties. He also points out that he has liquidated sizeable personal assets in attempt to pay his debts and stay afloat.

Having read the debtor's deposition testimony and considered the entirety of the record which the parties have provided, I find that there is insufficient evidence for me to conclude whether Mortensen had the actual intent to hinder, delay or defraud his creditors when the trust was created. A party's credibility simply cannot be determined from reading a deposition. Further, the deposition testimony, standing alone, gave a rather jumbled picture of Mortensen's financial transactions subsequent to the time the trust was created. Numerous financial records were referenced, but were not included as part of the record.

For the foregoing reasons, the cross-motions for summary judgment will be denied. An order will be entered consistent with this memorandum, and a date for trial will be set.

DATED: January 14, 2011

---

[16] The trustee bases his statute of limitations argument on Mortensen's deposition testimony. He says it is clear from this testimony that Mortensen had extensively researched the statute of limitations issue when he created the trust, and that he waited until the state statute of limitations had expired before filing bankruptcy. I didn't find the debtor's deposition testimony on this point as compelling as the trustee did. Nor could the debtor's credibility be evaluated from reading this testimony.

8

BY THE COURT

/s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve: C. Christianson, Esq.
D. Bundy, Esq.

01/14/11