UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:  Case No. A09-00565-DMD<br><br>THOMAS WILLIAM MORTENSEN,<br><br>Debtor. | Chapter 7<br><br>**Filed On<br>7/8/11** |
| KENNETH BATTLEY,<br><br>Plaintiff,<br><br>v.<br><br>ERIC J. MORTENSEN, ROBIN MARIE MULLINS, MARY MARGARET MORTENSEN-BELOUD, in their capacities as trustees of the Mortensen Seldovia Trust, and THOMAS W. MORTENSEN, in his individual capacity,<br><br>Defendants. | Adv. No. A09-90036-DMD |

**MEMORANDUM ON DEFENDANTS' MOTION FOR RECONSIDERATION**

The defendants have filed a timely motion for reconsideration of this court's memorandum decision and resulting judgment avoiding the debtor's transfer of real property to an asset protection trust. They contend the court has misinterpreted the facts in evidence and misapplied the applicable law. They raise four points. The plaintiff has filed an opposition to the defendants' motion, and also asks the court to reconsider one point. Both requests for reconsideration will be denied.

I.  The Transfer of the Property

First, the defendants argue that the debtor's transfer of the Seldovia property to an asset protection trust was outside of the scope of 11 U.S.C. § 548(e).  They contend that although Mortensen was the one who quitclaimed the property to the trust, "he did so at his mother's direction, and absent her direction and payment [of $100,000.00] he would not have signed the deed."[1]  The defendants contend that Mortensen's mother was, "in substance," the transferee of the Seldovia property to the trust.  Under the defendants' analysis, § 548(e) cannot apply because the transfer was made by the debtor's mother, rather than the debtor himself.[2]

The problem with this argument is that this is simply not what occurred.  Although Mortensen may have considered conveying the property to his mother, he decided after conferring with counsel that it would be best for him to transfer the property into the trust himself.[3]  Mortensen had an interest in this property; he owned this parcel free and clear.  He is the one who transferred it to the asset protection trust.  He is a beneficiary of the trust.  The transfer to the trust was made within 10 years before Mortensen filed his chapter 7 petition.  The uncontroverted evidence in this case establishes that subsections (A) through (C) of § 548(e) are satisfied.

---

[1] Defs.' Mot. for Recons., filed Jun. 8, 2011 (Docket No. 47), at 2.

[2] 11 U.S.C. § 548(e)(1)(B) specifies that the transfer to the trust must be made by the debtor.

[3] *See* Trustee's Opp'n to Mot. for Recons., filed Jun. 30, 2011 (Docket No. 49), at 4 (summary of Mortensen's trial testimony regarding his discussions with counsel).

2

II.  The Effect of AS 34.40.110(b)(1)

The defendants contend the essence of the court's ruling is that any transfer to a self-settled trust made within 10 years of a the filing of a bankruptcy petition is a fraudulent conveyance.  They base this contention on my finding that "a settlor's expressed intention to protect assets placed into a self-settled trust from a beneficiary's potential future creditors can be evidence of an intent to defraud."[4]  I made this finding notwithstanding AS 34.30.110(b)(1), which specifies that "a settlor's expressed intention to protect trust assets from a beneficiary's potential future creditors is not evidence of an intent to defraud."[5]

The defendants say the court should not use the creation of the trust itself as evidence of fraudulent intent, but should instead deal solely with the transfer of the property.  However, when property is transferred to a self-settled trust with the intention of protecting it from creditors, and the trust's express purpose is to protect that asset from creditors, both the trust and the transfer manifest the same intent.  In this case, I found that the trust's express purpose could provide evidence of fraudulent intent.  However, it was not the only evidence upon which I based my decision.

III.  The "Danger" of BAPCPA

The defendants take issue with the court's comment that Mortensen failed to recognize the danger posed by BAPCPA when he created his trust in 2005.  The court was simply noting that Mortensen's timing was unfortunate, in that he created the trust in early

---

[4] Mem. Decision, entered May 26, 2011 (Docket No. 42), at 16-17.

[5] AS 34.40.110(b)(1).

3

2005 and § 548(e) was enacted as part of BAPCPA later in the same year.  While this might have been expressed differently, it would not change the court's ultimate ruling.

IV.  Evidence of Actual Intent to Defraud

The defendants contend there is scant evidence of Mortensen's actual intent to defraud his creditors.  Mortensen's intent goes to the heart of this matter.  Because this element is often difficult to prove with direct evidence, courts will look to circumstantial "badges of fraud" to determine fraudulent intent.

> Among the more common circumstantial indicia of fraudulent intent at the time of the transfer are:  (1) *actual or threatened litigation against the debtor;* (2) a purported transfer of all or substantially all of the debtor's property; (3) *insolvency or other unmanageable indebtedness on the part of the debtor*; (4) *a special relationship between the debtor and the transferee;* and, after the transfer, (5) retention by the debtor of the property involved in the putative transfer.[6]

The defendants argue that when Mortensen placed the Seldovia property in trust he actually increased his vulnerability to creditors because he replaced an exempt

---

[6] *Acequia, Inc. v. Clinton (In re Acequia)*, 34 F.3d 800, 806 (9th Cir. 1994) (emphasis in original).

4

homestead with non-exempt cash.[7] I disagree. He placed most of the cash he received from his mother into the trust as well, insulating it from creditors' claims. In other words, substantially all of his property was transferred to the trust. The defendants' contention that Mortensen had to fund the trust in this manner is contradicted by Mortensen's own testimony. He said there was no expectation or requirement that he do this. His assertion that he lent these funds to the trust was not supported by the record. There was no promissory note. Nor was there evidence of repayment of the loan. Additionally, his investment of the funds, once placed into the trust, contradicted trust provisions which specified that the investment trustee would manage and invest trust assets. Mortensen, as a trust beneficiary, did not have this power.

Further, evidence at trial refutes Mortensen's claim that he was making all required payments on his debts when the Seldovia property was transferred. He had burned through a $100,000.00 annuity, and his credit card debt was between $49,711.00 and $85,000.00 when the trust was created. It was difficult to determine the true nature of Mortensen's finances; he was not a credible witness. Even accepting the defendants' contention that Mortensen's monthly expenses at that time were $3,000.00, rather than $5,000.00, he was still "under water" when he put the realty (and then the cash) into the

---

[7] The court reviewed the evidence Mortensen submitted in support of his contention that the Seldovia property was an exempt homestead, but did not conclusively determine this issue. *See* Mem. Decision (Docket No. 42), at 8. However, there was also evidence that the Seldovia property was simply a part-time or vacation home. *See* Pl.'s Complaint, filed Nov. 4, 2009 (Docket No. 1), at 3 ¶ 11; Mortensen's Ans., filed Nov. 24, 2011 (Docket No. 10), at 1 ¶ 4. Mortensen himself described the Seldovia parcel as "recreational property" which he shared with others in his family. Mortensen Aff., filed Jul. 30, 2011 (Docket No. 21), at 2-3. There was no dwelling on the property at the time it was transferred to the trust. *Id.* at 4.

trust.[8] His existing creditors were never paid off, and his debts were already unmanageable when the property was transferred. The timeline provided by the plaintiff in his opposition highlights this point.[9] Mortensen used the Seldovia property after he transferred it to the trust, but did not regularly pay rent to the trust. He also invested the funds he had transferred to the trust and lent funds to a friend for a vehicle purchase. Based on this evidence, I found sufficient badges of fraud to determine that Mortensen intended to hinder, delay and defraud his creditors when he transferred the Seldovia property to the trust. The defendants' motion for reconsideration has not persuaded me otherwise. Their motion will be denied.

IV. The Plaintiff's Request for Reconsideration on the Finding of Solvency

In his opposition to the motion for reconsideration, the plaintiff has asked the court to reconsider its finding that Mortensen was solvent at the time he transferred the Seldovia property to the trust. His request will be denied. The uncontroverted evidence establishes that Mortensen's mother had agreed to pay him $100,000.00 to transfer the Seldovia property to the trust. Accordingly, the court factored this payment into the solvency equation. From my perspective, the trustee's discussion of this issue goes more to Mortensen's lack of credibility. His request for reconsideration will be denied.

Conclusion

---

[8] Mortensen's annual income was $32,822.00 in 2000, $16,895.00 in 2001, $3,236.00 in 2002, $13,185.00 in 2003 and "about the same" in 2004. *See* Mem. Decision (Docket No. 42), at 4-5.

[9] Pl.'s Opp'n to Mot. for Recons., filed Jun. 30, 2011 (Docket No. 49), at 8-9.

6

The defendants' motion for reconsideration, and the trustee's request for reconsideration on the issue of insolvency, will both be denied. An order will be entered accordingly.

Dated: July 8, 2011

                                          BY THE COURT

                                          /s/ Donald MacDonald IV
                                          DONALD MacDONALD IV
                                          United States Bankruptcy Judge

Serve:      C. Christianson, Esq.
              D. Bundy, Esq.

              07/08/11